1

2

3

4                   UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    JULIE NORDMAN, et al.,                    Case No.  23-cv-00703-DMR

8                       Plaintiffs,

9            v.                                **ORDER ON PLAINTIFF'S MOTION TO REMAND**

10   BON APPETIT MANAGEMENT CO., et            Re: Dkt. No. 15-1
     al.,
11
                         Defendants.
12

13         Plaintiffs Julie Nordman and Linda Peppars filed this putative wage and hour class action

14   lawsuit against Defendants Bon Appetit Management Co. ("BAMCO") and Compass Group USA,

15   Inc. ("Compass").  BAMCO removed the case, asserting that this court has federal question

16   jurisdiction because Section 301 of the Labor Management Relations Act preempts Plaintiffs'

17   claims.  Plaintiffs now move to remand the case to state court.  [Docket Nos. 15-1 ("Mot."), 17

18   ("Reply").]  Defendants oppose.  [Docket No. 18.]  This matter is suitable for determination

19   without oral argument.  Civ. L.R. 7-1(b).  For the following reasons, the motion to remand is

20   granted.[1]

21   **I.     BACKGROUND**

22         **A.  Factual Background**

23         Defendants offer food-service management to corporations, universities, museums, and

24   specialty venues, including Oracle Park and Chase Center in San Francisco, California.  [Docket

25   No. 1-1 (Joel Moon Decl., Feb. 16, 2023), Ex. 1 ("Compl.") ¶ 22.]  Plaintiffs have worked as

26   concession workers for Defendants at Oracle Park and Chase Center since 2018.  *Id.* ¶ 23.

27   ───────────────

28   [1] The court also received BAMCO's motion to dismiss.  [Docket No. 9-1.]  Because the court
     grants Plaintiff's motion to remand, it does not reach the motion to dismiss.

United States District Court
Northern District of California

1    Plaintiffs are union members of UNITE HERE Local 2 (the "Union").  [Docket No. 1-2

2    (Kathryn Collins Decl., Feb. 16, 2023) ¶¶ 8, 10.]  BAMCO and the Union negotiated collective

3    bargaining agreements ("CBAs") on behalf of BAMCO's hourly, non-exempt employees,

4    including Plaintiffs.[2]  *Id.* ¶ 11, Exs. A ("Oracle Park CBA"), B ("Chase Center CBA"), C

5    ("Interim Chase Center CBA").[3]  Plaintiffs allege that Defendants have committed numerous wage

6    abuses against hourly-paid or non-exempt employees, including by failing to pay all wages owed,

7    permit timely and duty-free meal periods and rest periods, reimburse business-related expenses,

8    timely pay wages upon termination, provide accurate itemized wage statements, and by

9    withholding tips and gratuities.  Compl. ¶ 26.

10          **B.  Procedural History**

11          Plaintiffs originally filed this putative wage and hour class action lawsuit in the Superior

12   Court of California, County of San Mateo on January 17, 2023.  They assert eight claims for

13   violations of the California Labor Code and California Business and Professions Code: (1) Failure

14   to Pay Wages Owed For All Time Worked (Cal. Labor Code §§ 204,[4] 510, 1194, 1197, and 1198);

15   (2) Failure to Provide Meal Periods and Pay Meal Period Premiums (Cal. Labor Code §§ 226.7

16   and 512(a)); (3) Failure to Provide Rest Periods and Pay Rest Period Premiums (Cal. Labor Code

17   § 226.7); (4) Failure to Timely Pay Final Wages (Cal. Labor Code §§ 201, 202, and 203); (5)

18   Failure to Provide Accurate Itemized Wage Statements (Cal. Labor § 226(a)); (6) Failure to

19

---

20   [2] Courts may "consider evidence in deciding a remand motion, including documents that can be judicially noticed."  *Chatman v. WeDriveU, Inc.*, No. 3:22-CV-04849-WHO, 2022 WL 15654244,
21   at *4 (N.D. Cal. Oct. 28, 2022) (internal quotation marks and citation omitted).  The court takes judicial notice of the CBAs.  *See Jones v. AT&T*, No. C 07-3888 JF (PR), 2008 WL 902292, at *2
22   (N.D. Cal. Mar. 31, 2008).

23   [3] The parties cite different dates for each CBA.  For example, for the Oracle Park CBA (Ex. A), Plaintiffs assert that it runs from April 1, 2019 to March 31, 2023.  Defendants agree with the
24   effective date but claim that it terminates on March 31, 2025.  The parties also don't agree on the dates for the Chase Center CBA (Ex. B) and the Interim Chase Center CBA (Ex. C).  The Chase
25   Center CBA does not include effective dates and termination dates.  *See* Chase Center CBA, Article 23.1.  Defendants assert that the CBA is dated April 19, 2021 and remains in effect "as the
26   status quo" while BAMCO and the Union are in contract negotiations.  Collins Decl. ¶ 11.b.  The court need not sort out these differences because they do not appear to be material to the dispute.

27   [4] On April 7, 2023, Plaintiffs voluntarily dismissed the Labor Code § 204 claim without prejudice.
28   [Docket No. 21.]  For this reason, the court does not reach Defendants' argument related to preemption of the section 204 claim because it is moot.

1  Reimburse Necessary Business Expenses (Cal. Labor Code §§ 2800 and 2802); (7) Conversion;

2  and (8) Unfair Business Practices (Cal. Business & Professions Code § 17200, et seq.).  On

3  February 16, 2023, BAMCO removed the action, asserting that Section 301 of the Labor

4  Management Relations Act, 28 U.S.C. § 185 ("LMRA") preempts Plaintiffs' state law claims and

5  creates federal jurisdiction.  [Docket No. 1.]

## II.    LEGAL STANDARD

7        The federal district courts have original jurisdiction over "all civil actions arising under the

8  Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A civil action brought in

9  state court over which the federal district courts have original jurisdiction may be removed to the

10  federal district court for the district embracing the place where the action is pending.  *See* 28

11  U.S.C. § 1441(a).  "If at any time before final judgment it appears that the district court lacks

12  subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

13        "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-

14  pleaded complaint rule,' which provides that in the absence of diversity jurisdiction, federal

15  jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

16  pleaded complaint."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Caterpillar,*

17  *Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  That rule applies equally to evaluating the existence

18  of federal questions in cases brought initially in federal court and in removed cases.  *See Holmes*

19  *Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 n.2 (2002).  Under the "well-

20  pleaded complaint rule," the plaintiff is the master of his or her claim, and "may avoid federal

21  jurisdiction by exclusive reliance on state law."  *Caterpillar*, 482 U.S. at 392.  The removing

22  defendant bears the burden of establishing that removal was proper.  *Duncan v. Stuetzle*, 76 F.3d

23  1480, 1485 (9th Cir. 1996).

## III.    DISCUSSION

25        Plaintiffs move to remand the case to California state court.  They contend that none of

26  their claims for violations of the California Labor Code and California Business and Professions

27  Code require interpretation of the CBAs and therefore are not preempted by Section 301 of the

28  LMRA.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

Section 301(a) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a).  Section 301 "completely preempts any state causes of action based on alleged violations of contracts between employers and labor organizations." *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993). Usually, federal preemption is a defense that defendants cannot raise in order to remove state law cases.  *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019).  However, section 301 "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Id.* (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).  Labor claims may be subject to preemption under section 301 "even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it."  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  Thus, a state law claim is preempted "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement."  *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)).  "The plaintiff's claim is the touchstone for this analysis; the need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim.  If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the [collective bargaining agreement] in mounting a defense."  *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).

The Ninth Circuit uses a two-part analysis to determine whether a claim is preempted by section 301.  First, the court inquires "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA."  *Burnside*, 491 F.3d at 1059. If the right "exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there."  *Id.*  If the right exists independently of the CBA, the court must then consider whether "it is nevertheless substantially dependent on analysis of a collective-bargaining agreement."  *Id.*  (quoting *Caterpillar*, 482 U.S. at 394).  "If such dependence exists, then the claim is preempted by section 301."  *Id.* at 1059-60.  But if the claim can be resolved by "looking

United States District Court
Northern District of California

1  to" instead of "interpreting" the CBA, the claim is not preempted and can proceed under state

2  law.  *Id.* at 1060.

3       The court addresses each of Defendants' preemption arguments in turn.

4  **A.  California Labor Code § 510**

5       Plaintiffs allege that Defendants violated Labor Code § 510 by failing to pay overtime

6  wages.  Compl. ¶ 56.  Section 510 provides a default rule for overtime pay.  *Johnson v. San*

7  *Francisco Health Care & Rehab Inc.*, No. 22-CV-01982-JSC, 2022 WL 2789809, at *4 (N.D. Cal.

8  July 15, 2022) (citing *Curtis*, 913 F.3d at 1153).  Defendants contend that section 514 exempts

9  Plaintiffs' section 510 overtime claim because the CBAs control Plaintiffs' wages instead of the

10  Labor Code.  *See* Opp'n at 5.  The statutory exemption provides:

11            Section[ ] 510 ... do[es] not apply to an employee covered by a valid
12            collective bargaining agreement if the agreement expressly provides
          for the wages, hours of work, and working conditions of the
13            employees, and if the agreement provides premium wage rates for all
          overtime hours worked and a regular hourly rate of pay for those
14            employees of not less than 30 percent more than the state minimum
          wage.

15  Cal. Lab. Code § 514.  If a CBA meets the requirements of the section 514 exemption, the

16  plaintiff's right to overtime "exists solely as a result of the CBA, and therefore is preempted under

17  § 301 [of the LMRA]."  *Curtis*, 913 F.3d at 1154 (internal quotation marks and citation omitted).

18  Because this exemption is considered an affirmative defense, Defendants bear the burden of

19  demonstrating that the requirements of section 514 are satisfied.  *Ramirez*, 20 Cal.4th at 794-95.

20       Here, the parties dispute the section 514 requirement that the CBAs at issue provide "a

21  regular hourly rate of pay for those employees of not less than 30 percent more than the state

22  minimum wage."  *See* Reply at 2.  Defendants make a host of arguments in support of their

23  contention that the CBAs provide a regular hourly rate of pay for employees of not less than 30

24  percent more than the state minimum wage.  None are persuasive.

25       First, Defendants argue that the mere fact that Plaintiffs assert that the CBAs do not satisfy

26  the requirements of section 514 means the court is required to "interpret" the agreement, which

27  triggers section 301 preemption.  Opp'n at 4-5.  This circular logic lacks merit and does not

28  address the question at issue, namely, whether the CBAs provide "a regular hourly rate of pay for

those employees of not less than 30 percent more than the state minimum wage."

Second, Defendants improperly attempt to shift the burden of proof onto Plaintiffs, stating that "Plaintiffs' Motion fails to identify whether any alleged class members actually received wages at an hourly rate that failed to satisfy the statutory exemptions." *See* Opp'n at 5. As previously noted, it is Defendants' burden to establish that the section 514 exemption applies, not Plaintiffs'. *See Ramirez*, 20 Cal.4th at 794-95.

Third, Defendants maintain that Plaintiffs "did receive wages at sufficient hourly rates during the alleged class period to meet the requirements for exemption." Opp'n at 5. However, "Plaintiff's wages do not dictate whether the § 514 exemption applies." *Johnson*, 2022 WL 2789809, at *3. Rather, the law is clear that a CBA "must satisfy Section 514's substantive requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee." *Id.* (citing *Baltazar v. Ace Parking Mgmt., Inc.*, 2022 WL 1589297, at *3 (S.D. Cal. Mar. 14, 2022) (collecting cases)). Put another way, Defendants must establish that the CBAs provide a "regular hourly rate of pay . . . of not less than 30 percent more than the state minimum wage" for all employees covered by the CBAs. *See id.*

Defendants have not made this showing. The state minimum wage during the alleged class period of 2019 to the present was as follows: $12.00 per hour in 2019, $13.00 per hour in 2020, $14.00 per hour in 2021, $15.00 per hour in 2022, and $15.50 per hour in 2023. Cal. Lab Code § 1182.12; *see also* Collins Decl. ¶ 15. The CBAs purportedly cover "concession and premium employees," which are described as "all of [BAMCO's] full-time and regular part-time food and beverage employees . . . including . . . kitchen employees, suite attendants, cooks, servers, bussers, bartenders, cashiers, hosts, and stand employees[.]" Oracle Park CBA, Article 1.1 (defining the "Bargaining Unit Employees"); Chase Center CBA, Article 1.1 (same). For the section 514 exemption to apply, the CBAs would have to provide minimum hourly rates of not less than 30 percent more than the state minimum wage, or $15.60, $16.90, $18.20, $19.50, and $20.15 between 2019 and 2023, for all employees covered by the CBAs.

Defendants do not point to any CBA provision to support their assertion that Plaintiffs and all employees covered by the CBAs "were provided with an hourly rate pursuant to the respective

United States District Court
Northern District of California

1    CBAs of more than 30 percent of the state minimum wage during the alleged Class Period[.]"  *See*

2    Collins Decl. ¶ 15; *see also* Opp'n at 4-5.  Defendants note in passing that "negotiated and

3    bargained annual wage increases were provided pursuant to the CBAs."  Opp'n at 5.  However,

4    Defendants do not identify what purported provisions of the CBAs they rely on for this assertion,

5    let alone explain how such provisions show that employees were paid not less than 30 percent

6    more than the state minimum wage.

7         According to Plaintiffs, the CBAs plainly do not provide pay rates of not less than 30

8    percent more than the state minimum wage for all covered employees.  Reply at 4.  For example,

9    Plaintiffs explain that the Oracle Park CBA provides the hourly rate for just one job classification

10   – "set-up work" – which is listed at $12.80 per hour.  *See* Oracle Park CBA, Appendix A (Wage

11   Payments) at 1, 5.  The Oracle Park CBA highlights that this rate is "less than the San Francisco

12   minimum wage rate."  *Id.* at 1.  In addition, the Chase Center CBA provides hourly rates for only

13   six positions at the Chase Arena—"Cook 3," "Steward," "Barback," "Bartender," "Premium

14   Bartender," and "Warehouse"—ranging from $18.50 to $25.00 per hour.  Chase Center CBA,

15   Appendix A (Seniority List and Wage Schedule) at 35.  While employees who fall under some of

16   the higher paying job classifications in Appendix A might have hourly rates of more than 30

17   percent of the state minimum wage, the job classifications listed in Appendix A do not encompass

18   all employees who are covered by the CBA.  As explained above, the Chase Center CBA

19   purportedly covers "all of [BAMCO's] full-time and regular part-time food and beverage

20   employees . . . including kitchen employees, suite attendants, cooks, servers, bussers, bartenders,

21   cashiers, hosts, and stand employees[.]"  Thus, the Chase Center CBA does not provide a "regular

22   hourly rate of pay . . . of not less than 30 percent more than the state minimum wage" for *all*

23   *employees* covered by the contract.  *See Baltazar*, 2022 WL 1589297, at *3 (emphasis added).   In

24   addition, some of the hourly rates specified in Appendix A do not amount to 30 percent more than

25   the minimum wage in 2022 or 2023.  For example, the $18.50 hourly rate for "Barback" falls short

26   of the $19.50 requirement in 2022, as well as the $20.15 requirement in 2023.

27        In sum, because the CBAs do not provide a minimum hourly rate of not less than 30

28   percent more than the state minimum for all covered employees between 2019 and the present, *see*

United States District Court
Northern District of California

1    *Johnson*, 2022 WL 2789809, at *3, Plaintiffs' overtime claim does not exist "solely as a result of

2    the CBA[s]" and the claim is not preempted at step one of the LMRA preemption test. *Curtis*, 913

3    F.3d at 1154.[5]

4           Next, the court turns to the second part of the preemption test, namely, whether Plaintiffs'

5    overtime claim is "substantially dependent on analysis of a collective-bargaining agreement."

6    *Burnside*, 491 F.3d at 1059.  The court concludes that it is not.

7           Defendants contend that Plaintiffs' overtime claim requires substantial interpretation of the

8    CBAs, including provisions that set out how overtime is paid in the context of premium games,

9    based on seniority, and/or depending on employee classifications.  Opp'n at 6.  They conclude that

10   "[d]isputes are sure to be rife as between the parties with regard to those exacting overtime

11   standards, not least of all as to whether Plaintiffs or other covered employees were entitled to

12   higher contractual overtime rates for working playoff games; whether Plaintiffs and other covered

13   employees had seniority or Grandfathered status; and/or whether they assisted or performed work

14   for another employee classification at a different rate." *Id.*

15          Defendants fail to explain how Plaintiffs' overtime claims would require the court to

16   interpret the CBAs as opposed to merely look to the CBAs to determine applicable standards.  *See*

17   *Burnside*, 491 F.3d at 1059.  Crucially, Defendants do not point to any dispute over the meaning

18   of any term in the CBAs.  *See Curtis*, 913 F.3d 1153 ("At this second step of the analysis, claims

19   are only preempted to the extent there is an active dispute over the meaning of contract terms."

20   (cleaned up)).  That the court may "consider, refer to, or apply" applicable overtime standards is

21   insufficient to show that Plaintiffs' claim is substantially dependent on interpretation of the CBAs.

22   *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016).  As Defendants

23   have failed to carry their burden, Plaintiff's overtime claim is not preempted by section 301 of the

24   LMRA.

25   _____

26   [5] Defendants contend that to the extent any alleged class members did not receive an hourly rate
     that met the section 514 exemption requirements, "these employees . . . are not similarly situated
27   to Plaintiffs."  Opp'n at 5.  The court need not address Defendants' premature argument, which
     raises questions best decided on class certification. *See McGhee v. Tesoro Ref. & Mktg. Co. LLC*,
28   440 F. Supp. 3d 1062, 1071 (N.D. Cal. 2020).  The court must first determine whether it has
     jurisdiction over this case.

United States District Court
Northern District of California

**B.  California Labor Code § 512**

Plaintiffs allege that Defendants failed to provide required meal periods or compensation for meal periods under California Labor Code § 512.  Compl. ¶¶ 63-73.  Section 512(a) provides a default rule for meal periods.  *Chatman v. WeDriveU, Inc.*, No. 3:22-CV-04849-WHO, 2022 WL 15654244, at *10 (N.D. Cal. Oct. 28, 2022).  Defendants contend that section 512(e) provides an exemption for employees "covered by a valid collective bargaining agreement," which is defined as one that:

> expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Lab. Code § 512(e).

The parties dispute whether the CBAs guarantee that all covered employees receive a regular hourly pay rate that is at least 30 percent more than the state minimum wage.  *See* Reply at 7.  For the reasons previously set forth in the discussion of section 514, Defendants fail to meet their burden to establish that Plaintiffs' meal period claims are exempted by section 512(e).  Those claims are therefore not preempted at the first step of the preemption test.  *See Curtis*, 913 F.3d at 1154.  Defendants do not address the second prong of the *Burnside* test as to Plaintiffs' meal period claims and thereby concede the issue.  *See* Opp'n at 6.  Accordingly, Plaintiffs' meal period claims are not preempted by section 301.

**C.  California Labor Code §§ 2800 and 2802**

Plaintiffs allege that they were required to pay for specific business-related expenses for which they were not reimbursed in violation of Labor Code §§ 2800 and 2802.  Compl. ¶¶ 97-99.  Plaintiffs clarify that they were required to pay for "specific items" not covered by the CBAs – namely, cell phones, clear plastic bags, pens, notebooks calculators, and other supplies.  Mot. at 12.  Defendants do not dispute that the rights asserted by Plaintiffs under Labor Code §§ 2800 and 2802 are conferred upon an employee by virtue of state law.  *See* Opp'n at 6.  Instead, they assert that resolution of these claims would require substantial interpretation of the CBAs.  *Id.*

9

1    In support of their argument, Defendants point only to the Oracle Park CBA.  They rely on

2  a provision stating that "employees shall not be required or permitted to perform their duties

3  without fully functional equipment or tools."  Opp'n at 7 (citing Oracle Park CBA, Article

4  21.3(b)).  Based on this provision, Defendants confusingly argue that Plaintiffs' contention that

5  other "specific items" were required to perform their duties "clearly places these provisions of the

6  CBAs in dispute – and demonstrates that Plaintiffs' claims require the interpretation and

7  application of these provisions."  *See id.*  They explain that "[i]n essence, Defendant's position is

8  that all necessary tools and equipment were provided . . . while Plaintiffs take issue with the tools

9  and equipment that were provided pursuant to the CBAs."  *Id.*

10    This argument mischaracterizes Plaintiffs' reimbursement claims, which do not allege that

11  employees were not provided with functional equipment or tools or seek to enforce or challenge

12  this provision of the Oracle Park CBA.  As previously noted, Plaintiffs simply assert that

13  employees were not reimbursed for business-related expenses.  Because Defendants fail to raise

14  any active dispute about a provision in the Oracle Park CBA, Plaintiffs' reimbursement claims are

15  not preempted by section 301 of the LMRA.  *See Burnside*, 491 F.3d at 1060 ("[A]lleging a

16  hypothetical connection between the claim and the terms of the CBA is not enough to preempt the

17  claim." (quoting *Cramer*, 255 F.3d at 691)).  The fact that Defendants may refer to the terms of the

18  Oracle Park CBA to defend themselves does not change the result, because "[a] defense based on

19  the CBA is alone insufficient to require preemption."  *Ward v. Circus Circus Casinos, Inc.*, 473

20  F.3d 994, 998 (9th Cir. 2007).  Instead, "the need to interpret the CBA must inhere in the nature of

21  the plaintiff's claim."  *Cramer*, 255 F.3d at 691.

22    **D.  Conversion**

23    Plaintiffs allege that Defendants committed unlawful conversion by failing to distribute

24  tips and gratuities as required under Labor Code § 351.  Compl. ¶¶ 103-04.  In their opposition

25  brief, Defendants argue that the conversion claim will "necessarily require interpretation of the

26  CBAs' provisions regarding access to records regarding tips and gratuities in order to determine

liability, if any, then damages."[6]  Opp'n at 8.  As Defendants do not appear to dispute that Plaintiffs' conversion claim arises under California law, *see* Opp'n at 9, the court turns to the second part of the preemption analysis, i.e., whether Plaintiffs' conversion claim is "substantially dependent on analysis of a collective-bargaining agreement."

Defendants contend that the CBAs provide policies regarding the distribution and recording of records related to gratuities.  Opp'n at 8.  They explain that the Oracle Park CBA requires BAMCO to maintain records of tips collected in a pool and to disburse monies from the pool to eligible employees on a per capita basis of shares allocated based on an individual employee's hours worked.  *See* Oracle Park CBA, Articles 10.4, 19.2(a)(8).  The Chase Center CBA also requires BAMCO to maintain a record of gratuities.  *See* Chase Center CBA, Article 10.4.  Both CBAs require that requests to inspect such records be made through and by the Union upon request.  *See* Oracle Park CBA, Articles 10.4, 19.2(a)(8); Chase Center CBA, Article 10.4.  Thus, Defendants argue, Plaintiffs' conversion claim will require the court to interpret the CBAs to determine "which employees are eligible, what must be maintained in the records, how the monies are disbursed, and how the requests are made and reviewed by whom."  Opp'n at 9.

Contrary to Defendants' suggestion, Plaintiffs do not challenge the CBAs' provisions regarding employees' eligibility for gratuities or the allocation plan for tips; rather, they assert that BAMCO categorically failed to distribute all tips and gratuities owed to employees.  The fact that the parties may refer to the CBAs' provisions to calculate the amount of gratuities owed to each employee does not result in preemption.  *See Livadas v. Bradshaw*, 512 U.S. 107, 110 (1994) ("the bare fact that a collective bargaining agreement is consulted for damage computation is no reason to extinguish the state-law claim.").  Thus, Plaintiffs' conversion claim is not preempted by section 301.

---

[6] In their notice of removal, BAMCO argued that Plaintiffs' "Failure to Keep and/or Allow Inspection of Records Regarding Gratuities Claims" were preempted by section 301 of the LMRA.  Notice of Removal at 11-12.  In their opening brief, Plaintiffs explain that the complaint does not contain a claim for failure to maintain payroll records.  Mot. at 13.  Rather, Plaintiffs' allegations about access to tip and gratuity records are related to their conversion claim.  *Id.* Defendants acknowledge this clarification in their opposition brief.  *See* Opp'n at 8.

United States District Court
Northern District of California

**E.  The CBAs' Grievance and Arbitration Provisions**

Defendants contend that the grievance and arbitration provisions in the CBAs will require the court to determine whether Plaintiffs were required to exhaust these procedures before filing their claim in court and whether Plaintiffs complied with the obligation.  According to Defendants, this will require the court to interpret the CBAs.  Opp'n at 10-11.

The existence of grievance and arbitration procedures in the CBAs does not lead to federal preemption unless the litigation waiver is "clear and unmistakable" and directly references the relevant statutes at issue.  *Johnson*, 2022 WL 2789809, at *5, n.4 (citation omitted).  Notably, "a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering section 301 preemption."  *Burnside*, 491 F.3d at 1060.

Here, the CBAs' grievance provisions state:

> Should differences arise between the Company and the Union or its members employed by the Company as to meaning or application of the provisions of this Agreement, there shall be no suspension of work on the account of such differences but an earnest effort made on the part of both the representatives of the Management and representatives of the Union, to settle the dispute.

Oracle CBA, Article 9.1 (Grievance and Arbitration); Chase Center CBA, Article 9.1 (same). Preemption is not implicated because the CBAs do not reference the statutory rights at issue in this case.  *See Munoz v. Atl. Express of L.A., Inc.*, No. CV 12-6074-GHK FMOX, 2012 WL 5349408, at *5 (C.D. Cal. Oct. 30, 2012) (concluding that the grievance procedure in the CBA did not implicate LMRA preemption because it did not, by its terms, subject the plaintiffs' claims under state law to said procedure).  In addition, "even if Plaintiff's claims may be subject to the grievance procedure, this argument constitutes a defensive use of the CBA, which, under clearly established law, cannot create a federal question."[7]  *Id.*

---

[7] Defendants also argue that the court will need to interpret the CBAs to 1) review Plaintiffs' opposition to the motion to dismiss, and 2) resolve class-wide issues and determine whether class certification is appropriate.  Opp'n at 13-14.  The court does not reach these arguments because it must first determine whether it has jurisdiction over this case.  In any event, both arguments amount to a defensive use of the CBAs, which is not enough to trigger preemption.  *See Cramer*, 255 F.3d at 690.  As previously explained, "[i]f the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."  *Cramer*, 255 F.3d at 691.

United States District Court
Northern District of California

United States District Court
Northern District of California

### F.  Plaintiffs' Remaining Claims

Defendants argue that the court should assert supplemental jurisdiction over Plaintiffs' remaining state law claims because they arise "from the same common nucleus of operative facts" as the claims addressed above.  Opp'n at 11-13.  Because the court finds that the LMRA does not preempt any of Plaintiffs' claims, it lacks subject matter jurisdiction over this action and declines to exercise supplemental jurisdiction over the remaining claims.  *See* 28 U.S.C. § 1367(c)(3); *see also Martinez v. Omni Hotels Mgmt. Corp.*, 514 F. Supp. 3d 1227, 1242 (S.D. Cal. 2021) (citing *Moore v. Aramark Unif. Servs., LLC*, No. 17-CV-06288-JST, 2018 WL 701258, at *5 (N.D. Cal. Feb. 5, 2018)).

## IV.   CONCLUSION

For the foregoing reasons, the court grants Plaintiffs' motion to remand this matter to the Superior Court of the State of California, County of San Mateo.  BAMCO's motion to dismiss (Docket No. 9-1) is denied as moot.

**IT IS SO ORDERED.**

Dated: April 18, 2023

_____
Donna M. Ryu
Chief Magistrate Judge